IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED

02 NOV 22 AM 10: 55

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| BIG LOTS STORES, INC.;<br>CONSOLIDATED PROPERTY<br>HOLDINGS, INC. | )<br>)<br>) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    CV 02-PT-2128-M |
| | ) |
| TONY WALKER, an individual; and<br>50% LESS AND MORE STORE, INC.,<br>An Alabama Corporation | )<br>)<br>) |
| | ) |
| Defendants. | ) |

ENTERED

NOV 22 2002

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Big Lots Stores, Inc. ("Big Lots") and Consolidated Property Holdings, Inc.

("CPHI") (collectively, "plaintiffs"), filed a motion for preliminary injunction seeking to enjoin

defendants Tony Walker and the 50% Less and More Store, Inc. ("50% Less and More")

(collectively, "defendants"), from using the name "Little Lots" as the name of defendants' retail

establishment.  The motion for preliminary injunction came before the court for hearing on

September 23, 2002.

Plaintiff CPHI is a corporation organized and existing under the laws of the State of

Nevada, with its principal place of business in Las Vegas, Nevada.

Plaintiff Big Lots (formerly known as Consolidated Stores Corporation), is a corporation

organized and existing under the laws of the State of Ohio, with its principal place of business in

Columbus, Ohio.



Defendant Tony Walker ("Walker") is an individual over the age of 19 who resides in this judicial circuit and is the principal of defendant 50% Less & More Store.  (Hearing Transcript ("Tr.") p. 68, II. 14-18).

Defendant 50% Less & More Store is an Alabama corporation with its principal place of business in the State of Alabama.

50% Less & More operates an unincorporated division at 510 Grove Avenue, Boaz, Alabama 35957 that does business under the name "Little Lots."  (Tr. P. 78, II. 19-21).

## FACTS

Plaintiff CPHI is the owner of the service mark BIG LOTS, which is a registered trademark, along with several other mark registrations maintained by CPHI, including BIG LOTS BARGAINS CLOSEOUTS; BIG LOTS FURNITURE; and BIG LOTS THE CLOSEOUT STORE.  Plaintiff Big Lots is the licensee of the BIG LOTS mark.  Big Lots and its affiliates operate retail stores under the BIG LOTS mark and other marks in over forty-five states, for a total of over 1,350 retail stores.  Big Lots is in the process of converting all of its stores, including its Pic'N'Save and MacFrugals stores, to stores which bear the Big Lots name.  Big Lots sells broad line merchandise at below-discount prices, offering a wide selection of products from any of the world's leading manufacturers, as well as goods under the Big Lots private label. The Form 10-K filed by plaintiffs states "The Company competes with discount stores (such as Wal-Mart, Kmart and Target), dollar stores, deep discount drug store chains, and other value-oriented specialty retailers."  Big Lots also targets a repeat customer base by stocking items it refers to as "never out items."  Big Lots tags some of its goods with the BIG LOTS! mark, scans customer purchases at point of business and bags customer purchases in plastic bags bearing the

2

BIG LOTS! mark.

CPHI is the owner of the service mark BIG LOTS, which was first used by CPHI's predecessor in interest as early as June 1, 1985 to identify its retail store services. (Declaration of Jackie Smith ("Smith Dec.") ¶3).

The BIG LOTS mark was first used in interstate commerce by CPHI's predecessor in interest as early as September 18, 1985. (Smith Dec. ¶3).

The BIG LOTS mark was first registered on the Principal Register of the United States Patent & Trademark Office on August 12, 1997 (Reg. No. 2,087,643) (the "BIG LOTS Registration"). (Smith Dec. ¶4).

The BIG LOTS name and mark have been in exclusive and continuous use by CPHI, its predecessors, or licensees to identify retail store services since first putting the mark into use. (Smith Dec. ¶4).

CPHI currently maintains the following additional federal service mark registrations on the Principal Register of the United States Patent & Trademark Office for marks incorporating the term "BIG LOTS": BIG LOTS BARGAINS CLOSEOUTS (Reg. No. 2,336,292); BIG LOTS FURNITURE (Reg. No. 2,255,148); and BIG LOTS THE CLOSEOUT STORE (Reg. No. 2,236,529) (collectively, the "BIG LOTS Marks"). (Smith Dec. ¶4).

Due to the continuous and exclusive use of the BIG LOTS mark by CPHI's licensee, CPHI has filed a Combined Affidavit of Continued Use and Incontestability with respect to the BIG LOTS Registration (Reg. No. 2,087,643) with the United States Patent & Trademark Office. (Smith Dec. ¶6).

The BIG LOTS Marks are registered for use with "retail store services in the field of a

3

variety of goods." (Smith Dec., Exhibit A).

BIG LOTS is the licensee of the trademarks and service marks of CPHI, including the federally registered BIG LOTS Marks. (Smith Dec. ¶5; Declaration of Chadwick P. Reynolds ("Reynolds Dec:") ¶3).

BIG LOTS and its affiliates operate retail stores under the BIG LOTS Marks in over forty-five states, for a total of over 1,350 retail stores. (Reynolds Dec. ¶5).

As of February, 2002, Big Lots operated thirty-four retail stores under the BIG LOTS mark in the State of Alabama. (Reynolds Dec. ¶5).

Big Lots opened its first store under the BIG LOTS mark in Alabama in November 1988, at Decatur, Alabama. (Reynolds Dec. ¶5).

Big Lots opened the store at 14300 Highway 432 South, Guntersville, Alabama in June 1996. (Reynolds Dec. ¶5).

Big Lots operates in the business of "closeout retailing" which is the business of selling broad line merchandise at below-discount prices. (Reynolds Dec. ¶6).

The merchandise offered in Big Lots' retail stores are often the result of product or packaging changes, manufacturer overruns, excess inventories, or discontinued product lines. (Reynolds Dec. ¶6).

Big Lot's primary merchandise is acquired in a regular and systematic basis directly from manufacturers through Big Lots' purchasing arrangements, and 30-35% of its products are purchased directly from overseas suppliers. (*See* pages 8 and 9 of Big Lots Form 10-K; headings "Operations" and "Purchasing.").

Big Lots has expended substantial resources in advertising and promoting the BIG LOTS

4

Marks since its predecessor began using those marks. (Reynolds Dec. ¶8).

Since Big Lots began using marks incorporating the phrase "Big Lots" in 1985, Big Lots has made significant advertising expenditures to promote its services offered under the BIG LOTS Marks. (Reynolds Dec. ¶9).

Currently, Big Lots conducts advertising primarily on television (with advertisements featuring celebrity Jerry VanDyke), and in local newspaper inserts. (Reynolds Dec. ¶10).

Little Lots is a local business located in Boaz, Alabama, and is engaged in the discount sale of miscellaneous merchandise which defendant Walker locates and purchases at salvage. Much of the acquired merchandise must then be reprocessed and cleaned up before being placed in the Little Lots store. Most of defendants' merchandise is displayed loose or in bins, often without its original packaging. Little Lots handwrites its pricing, has no scanning equipment and bags purchases in whatever generic plastic bags it has acquired at salvage. Little Lots does not stock direct manufacturer acquired goods, "never out items," or have any private label goods. Little Lots does not claim to maintain a target customer base, its typical customer being someone "looking for a deal."

Defendants opened a retail business called "LITTLE LOTS" in Boaz, Alabama on or around July 1, 2002. (Tr. p. 68, 1. 24- p. 69, 1. 69).

Through the LITTLE LOTS retail store, defendants offer retail store services which include operation of a discount store where common items can be purchased at extreme discount or distressed prices. (Tr. 67, I. 13- p. 68, 1.3).

The items typically offered by defendants under the LITTLE LOTS name include a combination of popular name-brand items and other goods that are not associated with a known

name-brand. (Tr. p. 80, 1. 22 - p 81, 1.3).

Both stores are located in shopping centers having multiple other stores in the shopping center and a large parking lot serving the center. (Tr. p. 69, 1. 5 - p. 70, 1. 2).

Both stores have the name in large letters above the front entrance. (Tr. p. 12, II.1-11; Tr. p.70, II.. 3-6). Big Lots also states "THE CLOSEOUT STORE" beneath its name.

Both stores have over twenty thousand square feet of floor space. (Tr. p. 65, II..14-15).

Employees of LITTLE LOTS wear smocks or badges that bear the name LITTLE LOTS. (Tr. p. 79, II. 8-20).

Employees of BIG LOTS wear smocks or shirts that bear the name BIG LOTS. (Tr. p. 25, II. 11-17).

Both plaintiffs and defendants carry merchandise that has been purchased at discount or closeout, although defendants characterize some of their merchandise as "salvage" items. (Tr. p. 64, II. 8-22).

A portion of defendants' merchandise in the LITTLE LOTS store is not organized for tidy display, instead being loose and in bins. (Tr. p. 65, II. 4-13; Tr. p. 70, 1.16 - p. 71, 1.6; Defendants' Exhibit 9).

Both stores advertise in print media, namely, local newspapers. (Reynolds Dec. ¶10; Tr. p. 13, 11.2-13; Tr. p. 65, 1.22 - p. 66, 1.7. Defendants' Exhibit 9). The Big Lots advertising is more extensive and sophisticated.

Plaintiffs' print advertising is done with color printed inserts in local newspapers and defendants' print advertising is black and white advertising in the body of the newspaper. (Tr. p. 26, 11. 26-22; Defendants' Exhibit 2; Tr. p. 61,11. 16-24; Defendants' Exhibit 8).

Defendants have received a number of inquiries (approximately ten times since opening) from customers concerning the relationship or affiliation between plaintiffs and defendants' LITTLE LOTS store.  (Tr. p. 62, 11.12-17; Tr. p. 77, 1.7 -p 78, 1.4).

On multiple occasions, customers at plaintiffs' BIG LOTS store in Guntersville have asked employees of that store whether there is an affiliation between plaintiffs and defendants' LITTLE LOTS store. (Tr. p. 14, 1.21 - p. 16, 1.4; Scheidegger Dec. ¶ 3).

Defendants did not consult an attorney about using "LITTLE LOTS" as a name for the new store in Boaz, Alabama.  (Tr. p. 81, II. 4-10).

Defendants did not conduct or commission any trademark or trade name search prior to opening the store in Boaz under the name "LITTLE LOTS." (*Id.*)

Prior to opening the LITTLE LOTS store in Boaz, defendants were aware of BIG LOTS stores, including the BIG LOTS store in Guntersville.  (Tr. p. 75,11. 18-20)

Defendant Walker previously operated a store in Cullman, Alabama which displayed a sign saying "LITTLE LOTS."  (Tr. p. 71, 1.24 p. 72, 1.6; Defendant's Exhibit 6).

The said store opened in 1993 and Walker sold the store in 1994.  (Tr. p. 60, 11. 15-25; Tr. p. 72, 11. 18-25).

The store in Cullman was located in a "flea market" type complex called Country Village, was a stand-alone building, and had approximately 500 square feet of floor space. (Tr. p. 72, 11. 7-17).

The Country Village store in Cullman had no resemblance to defendants' LITTLE LOTS store. (*Id.*)

Between 1994 and July 2002, when defendants opened the LITTLE LOTS store in Boaz,

defendants did not operate any store under the name "LITTLE LOTS" or have any interest in any operation using that name. (Tr. p. 72, I. 18 -p. 73, 1. 12).

The evidence also shows that plaintiffs opened the first store under the BIG LOTS mark in Alabama in November 1988, in Decatur, Alabama, prior to any use of LITTLE LOTS by defendants and that plaintiffs opened the Guntersville BIG LOTS store in June 1996. (Reynolds. Dec. ¶5).

## CONCLUSIONS OF LAW

This court has subject matter jurisdiction over this action, venue for this action is proper in this judicial district, and this court has personal jurisdiction over the parties to this action.

### Preliminary Injunction Standard

To prevail on their motion for preliminary injunction, plaintiffs must show the following: (1) a substantial likelihood of success on the merits, (2) that they will suffer irreparable injury unless an injunction issues, (3) that plaintiffs' injury outweighs possible injury the injunction may cause to defendants, and (4) that an injunction would not disserve the public interest. *See CBS Broad., Inc. v. Echostar Communications Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).

### Plaintiffs' Unfair Competition and Trademark Infringement Claims

To prevail on these claims, plaintiffs must show that they have rights in the BIG LOTS mark and that their rights have been violated by use of a confusingly similar name or mark by defendants. *See* 15 U.S.C. § 1125(a) (unfair competition liability for any person who "on or in connection with any goods or services, or any container for goods, uses in commerce any word, terms name, symbol, or device, ... which is likely to cause confusion, or to cause mistake, or to

8

deceive, as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."); *id.* at § 1114(1)(a) (trademark infringement liability for person who "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive"); *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984) (discussing the elements of a Lanham Act § 43(a) claim); *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1178 (11th Cir. 1994) (use of a registered trademark without permission of the owner, which is likely to cause confusion in the minds of potential buyers as to the source, affiliation, or sponsorship of the products constitutes trademark infringement).

<u>**Plaintiffs' Rights in the BIG LOTS Marks**</u>

CPHI has federal trademark registrations for its BIG LOTS Marks, which constitute "prima facie evidence of the validity of the registered mark and the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b).

The BIG LOTS Registration (Reg. No. 2,087,643) is incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

The BIG LOTS Registration is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce...on or in connection with the

goods or services specified in the affidavit filed under the provisions of section 15." 15 U.S.C.§ 1115(b).  Plaintiffs therefore have rights in the BIG LOTS Marks.

### The Likelihood of Confusion Factors

The court next must determine whether the defendants' use of "LITTLE LOTS" in the operation of its retail store offering merchandise at closeout prices is likely to cause confusion as to the affiliation, connection, association of defendants with plaintiffs or as to the origin, sponsorship, or approval of defendants' services by plaintiffs.  15 U.S.C. § 1125(a).

The court applies the following test to determine whether likelihood of confusion is present: "(1) the strength of the plaintiffs mark; (2) the similarity between the plaintiffs mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales method; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiffs' established mark; and (7) actual confusion." *Alliance Metals, Inc., v. Hinley Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000).

The court must take into consideration the totality of the circumstances surrounding each particular case. *Lone Star Steakhouse & Saloon, Inc. v. Lone Star Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997).  "The issue of likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists. Rather, a court must evaluate the weight to be accorded the individual factors and then make its ultimate decision.  The appropriate weight to be given to each of these factors varies with the circumstances of the case." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531,1538 (11th Cir. 1986).

10

## I. Strength of the Plaintiffs' Mark

The first factor for the court to consider is the strength of the plaintiffs' mark. *Alliance Metals*, 222 F.3d at 907.

"Classifying the type of mark plaintiff has determines whether it is strong of weak." *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

"The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives." *Id.* at 1335

"There are four categories of marks: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary." *Id.*

"Suggestive terms suggest characteristics of the goods and services and 'require an effort of the imagination by the consumer in order to be understood as descriptive.'" *Deiter v. B & H Indus. of Southwest Florida, Inc.*, 880 F.2d 322, 327 (11th Cir. 1989) (quoting *General Shoe Corp. v. Rosen*, 111 F.2d 95, 98 (4th Cir. 1940)). "An arbitrary mark is a word or phrase that bear no direct relationship to the product.... Arbitrary marks are the strongest of the four categories." *Frehling*, 192 F.3d at 1335-36 (citation omitted).

At the most, the BIG LOTS Marks, and in particular, the BIG LOTS Registration, are suggestive marks, as they suggest characteristics of the retail store services offered by plaintiffs. The marks may very well both be descriptive. The terms "Big" and "Lots" describe the quantitative nature of the products sold. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 974 (11th Cir. 1983).[1]

_____

[1]It may be that the registration belies a descriptive designation. In any event, the court does not find that the Big Lots name is "strong" other than to the extent such strength may be provided by an incontestable registration.

The court notes that the BIG LOTS Registration is "incontestable" and that "the mark's incontestability serves to enhance its strength." *Frehling*, 192 F.3d at 1336.

The court is not prepared to hold, at this stage, that BIG LOTS is a strong mark.

## II. Similarities Between the BIG LOTS and LITTLE LOTS Marks

In the next factor, "the court compares the marks and considered the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling*, 192 F.3d at 1337. In doing so, the court must consider "the overall impression created by the marks as a whole rather than simply comparing individual features of the marks." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985) (citations omitted).

Both parties' marks are two word marks that contain the word "LOTS"; specifically, the word "LOTS" is preceded by another word, "BIG" or "LITTLE." BIG LOTS uses a qualifier "THE CLOSEOUT STORE" in conjunction with its mark at its Guntersville store. BIG LOTS also uses a distinctive exclamation point (!) in all of its window advertising, price tagging, and other signage. The defendants' marks do not utilize either.

Both marks call up the concept of size in the consumer's mind. Therefore, they both have a meaning that relates the word "LOTS' to size.

The marks must be compared as a whole, and the focus of the inquiry on appearance and sound is on the non-generic portion. *Harland*, 711 F.2d at 976 (citation omitted).

The marks are used in a similar manner; namely, prominently on the front of the parties' retail stores and in advertising.

The court holds that there is some similarity between the marks BIG LOTS and LITTLE LOTS.

### III.  Similarity in the Retail Services Offered by the Parties

The next factor compares the similarity between the services offered by the plaintiffs and the defendants. *Alliance Metals*, 222 F.3d at 907.

An absolute identity of goods or services is not required.  Instead, the relevant test is "not whether the goods [or services] could be distinguished ...but whether the goods [or services] are so related in the minds of consumers that they get the sense that a single producer is like to put out both goods.... While the compositional differences matter, they are not dispositive; we focus, rather, on the reasonable belief of the average consumer as to what the likely source of the goods [or services] was." *Frehling*, 192 F.3d at 1338.

Big Lots and defendants both offer retail store services involving the sale of a variety of goods at closeout prices.

The court finds that the services offered by plaintiffs and defendants are similar only to the extent that they both sell a variety of consumer products to the public.

### IV.  Similarity in the Parties' Sales Method

The next factor compares the similarity between the parties' sales method. *Alliance Metals*, 222 F.3d at 907.

"This factor takes into consideration where, how, and to whom the parties products [or services] are sold." *Frehling*, 192 F.3d at 1339.

Plaintiffs' Guntersville BIG LOTS store and defendants' LITTLE LOTS store both are located in large buildings in multiple store shopping centers, have several thousand feet of retail floor space, and both have a combination of brand name and non-brand name items offered at discount prices.  Big Lots obviously competes primarily with larger discount stores.

The stores are located within some thirteen miles of one another, on the U. S. Highway 431 corridor connecting Boaz, Albertville, and Guntersville. The stores cater to customers who are looking for goods at discount prices.

## V.  Similarity in Advertising Methods

The next factor compares the similarity in advertising methods used by plaintiffs and defendants. *Alliance Metals*, 222 F.3d at 907.

The standard for this factor is whether there is "likely to be significant enough overlap in the readership of the publications in which the parties advertise that a possibility of confusion could result." *Frehling*, 192 F.3d at 1340.

While plaintiffs also use television advertising, both plaintiffs and defendants use print advertising in local newspapers.  (See above)

## VI.  Evidence of Defendants' Intent

For the next factor, the court considers the defendants' intent in adopting the LITTLE LOTS name. *Alliance Metals*, 222 F.3d at 907.

"If it can be shown that a defendant adopted a plaintiffs mark with the intention of deriving a benefit from the plaintiffs business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling*, 192 F.3d at 1440.

Defendants did not consult an attorney prior to choosing the LITTLE LOTS name, and did not conduct any trademark or name search, and were aware of the BIG LOTS store in Guntersville.

Failure to conduct a trademark search or to consult an attorney prior to using the LITTLE LOTS name, coupled with actual knowledge of the BIG LOTS Marks, may under some

14

circumstances constitute "intentional blindness" to the plaintiffs' rights by defendants. *See Frehling*, 192 F.3d at 1340.

Intentional blindness to the plaintiffs' rights in their marks is indicative of the defendants' intent to derive a benefit from the plaintiffs' business reputation. *Id.*

The fact that the defendants' mark calls to mind another's trademark and catches the attention of consumers is an important indicator of the defendants' intent. *See Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1545 (11th Cir. 1985) ("In short, there can be no doubt that Laite hoped to sell 'Battlin' Bulldog Beer not because the beer tastes great, but because the cans would catch the attention of University of Georgia football fans."). In *Laite*, the court added: "Had the cans of Battlin' Bulldog Beer been painted in different colors, or had the Battlin' Bulldog worn a different monogram on its sweater, we might have had a different case. Instead the cans are red and black, the colors of the University of Georgia, and the Battlin' Bulldog wears the letter "G" ....We find the difference between the two to be so minor as to be legally, if not factually, nonexistent." *Id.* at 1544.[2]

## VII.  Evidence of Actual Confusion

The final factor focuses on evidence of actual confusion. *Alliance Metals*, 222 F.3d at 907.

"Actual confusion by a few customers is the best evidence of likelihood of confusion by many customers." *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1175, 1185 (11th Cir. 1985); *see also Alliance Metals*, 222 F.3d at 907 ("The most persuasive evidence in assessing the likelihood of confusion is proof of actual confusion").

---

[2] Here, the two stores would not likely be confused on appearance.

15

"The court must [ultimately] evaluate the evidence of actual confusion in the list of the totality of the circumstances involved." *AmBrit,* 812 F.2d at 1543.

Along with the type of mark, evidence of actual confusion is an important likelihood of confusion factor considered by the courts of this circuit. *Frehling*, 192 F.3d at 1335.

The court must ultimately, however, consider the totality of the circumstances surrounding each particular case. *Lone Star Steakhouse*, 122 F.3d at 1382. "[I]t takes very little evidence to establish the existence of the actual confusion factor. Moreover, that there were only a few reported instances of actual confusion does not mean that only those individuals were actually confused." *AmBrit*, 812 F.2d at 1544. "The rule courts usually apply is that infringement occurs when 'there is a likelihood of confusion in the mind[s] of an appreciable number of "reasonably prudent" buyers.'" *Harland*, 711 F.2d at 979 n.22 (citation omitted).

There is testimony from both plaintiffs and defendant Walker himself that customers of both the BIG LOTS store in Guntersville and the LITTLE LOTS store have inquired about the affiliation between the stores.

## COURT'S CONCLUSION

The court will further discuss the case primarily from the perspective of the issues that the plaintiffs must prevail on in order to establish their right to a preliminary injunction. The court will particularly address the requirements of a substantial likelihood of success on the merits and the requirement that the plaintiffs' injury outweigh the possible injury to the defendants. The requirement relating to public interest is likely even and the court will not reach the issue of irreparable injury to the plaintiffs.

In discussing the substantial likelihood of success on the merits, the court will not be

making any final factual determinations.[3]  The court has considered all of the above stated facts and legal issues, and will not hereinafter repeat them.  The court has ultimately decided that it cannot presently conclude from a preponderance of the evidence that there is a substantial likelihood that the plaintiffs will prevail on the merits and summarizes its reasons as follows.

The only possible present substantial basis for finding that there is a likelihood of confusion would be based upon the respective business names and the questions which have been posed by third parties concerning any association between the two businesses.  There has not been any specific evidence of what questions have been asked and there is no evidence of appropriate and reliable surveys.

All the words in both business names are in widespread use.  This includes "big," "little" and "lots."  If the respective uses were Big Warehouse and Little Warehouse, Big Store and Little Store, Big Market and Little Market, Big League and Little League, Big Dipper and Little Dipper, the weakness of the range of protection might be more obvious.[4]

The contrast between the words "Big" and "Little" could not be more distinct.[5]  The only association is that they both relate to size, albeit contrary to each other.  One might be considered a play on the other, but they are still distinct and clearly descriptive.  The word "lots" is likewise

---

[3]Neither are any findings of fact stated above to be considered final.  They relate only to a consideration of the appropriateness of a preliminary injunction.  The court has also considered the parties' submissions in response to the court's post hearing order(s).

[4]The Parties and others may think of more appropriate analogies.

[5]The similarities here are probably not as confusing as the similarities between a "Ross" bicycle cruiser and a "Boss" bicycle cruiser. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502 (11th Cir. 1984).

descriptive and in widespread use.[6]

Except for the words themselves, there is absolutely no likelihood of confusion by people who see the stores, their layouts and their products.  The evidence shows that the LITTLE LOTS store does not have the quality of goods, display, and format that plaintiffs do in their BIG LOTS stores.  "Big Lots" has an obviously more sophisticated operation with an apparently better line of products and display.  The advertising, although both use newspapers, is obviously distinguishable in form, color and layout.

The court particularly notes the use of the word "lots" in such terms as "odd lots," "job lots," "tot lots," "case lots," "custom lots," "mix-a-lots," "bargain lots," "stock lots," "food lots," "mini lots," "scattered lots," "unique lots," etc.[7]  The court also notes the various uses of "big" and "little" reflected in the exhibits to the affidavit of Diane B. Mangham.

The court further concludes that the plaintiffs have not established that the threatened injury to the plaintiffs outweighs whatever damage the proposed injunction may cause the defendants.  If the plaintiffs' name is as strong as plaintiffs suggest, there is likely to be little, if any, damage caused to the plaintiffs.  The damage to the defendants, proportionately, would likely be much greater.  The only likely damage to the plaintiffs would arise from failure to attempt to protect their name.  What they have  attempted in that regard would not be lost by being denied a preliminary injunction.  If this court errs in denying a preliminary injunction, the plaintiffs have an immediate right of appeal.

---

[6]When the court uses the term descriptive, it does so, not necessarily as a term of art because the plaintiffs seem to suggest that such a finding by the court cannot be legally made.  The court does feel that the nature of the terms, separately and combined, has a bearing on their strength.

[7]Compare *John H. Harland Co. v. Clark Checks, Inc.*, 711 F.2d 966 (11th Cir. 1983) (discussing the word "stubs").

The court ultimately concludes that plaintiffs have not "clearly established the 'burden of persuasion' as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).[8]

This the 21 day of November, 2002.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[8]The law established in the Victoria's Secret-Victor's Little Secret case pending before the United States Supreme Court may shed further light.

ma

United States District Court
Northern District of Alabama
November 22, 2002

* * MAILING CERTIFICATE OF CLERK * *

Re:  4:02-cv-02363

True and correct copies of the attached were faxed or mailed
by the clerk to the following:

     Elmer Ray Jackson Jr
     KCF
     Kilby Correctional Facility
     159746
     PO Box 150
     Mt Meigs, AL  36057

United States District Court
Northern District of Alabama
November 22, 2002


* * MAILING CERTIFICATE OF CLERK * *

Re:  4:02-cv-02363


True and correct copies of the attached were faxed or mailed
by the clerk to the following:

        Elmer Ray Jackson Jr
        KCF
        Kilby Correctional Facility
        159746
        PO Box 150
        Mt Meigs, AL  36057