FILED
04 APR 26 AM 10:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
APR 26 2004

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| BIG LOTS STORES, INC.; ) | |
| CONSOLIDATED PROPERTY ) | |
| HOLDINGS, INC. ) | |
|    ) | |
|   Plaintiffs, ) | |
|    ) | |
| v.   ) | CV 02-PT-2128-M |
|    ) | |
| TONY WALKER, an individual; and ) | |
| 50% LESS AND MORE STORE, INC., ) | |
| An Alabama Corporation ) | |
|    ) | |
|   Defendants. | |

## MEMORANDUM OPINION

This cause comes on to be heard on plaintiffs' Motion for New Trial filed on March 24, 2004. The court first responds to each ground asserted in said motion seriatim as numbered by the plaintiffs.

1. This court will not, at this stage, address this conclusory allegation.

2. This court disagrees that *Holiday Inns, Inc.* ("*Holiday*") is "almost wholly inapposite." To the contrary, this court considers it to be significantly applicable. While this court quoted substantially from *Holiday*, the similarity is so striking that there are other areas of comparison which have not been quoted. This court recommends a full reading of *Holiday*.

3. This court recited the parties' arguments so that they would be summarized for the appellate court. All cases must be reduced to an essence. This court made it plain what it based its decision on. The plaintiffs' "Big Lots' Points for Determination on Motion For New Trial," filed by the plaintiffs on April 2, 2004 in response to this court's request of March 29, 2004,

makes it plain that there was not so much a question of unresolved issues as issues resolved contrary to plaintiffs' position.

4. This court cannot make the basis for its ultimate conclusion any more apparent. That conclusion was based primarily on the controlling case of *Holiday*, the totality of circumstances and plaintiffs' repeated argument that the <u>total</u> mark language should be considered. This court's conclusions may be supported by a panoply of other facts and law or there may be some chinks in the court's armor. The court's intention, however, was to make a decision and tell what that decision was significantly based upon, not to conduct a seminar nor to reach a series of intermediate findings and conclusions just because the parties discussed them. The arguments are laid out for others to see and consider if deemed necessary.

5. This court made it plain in its conclusions that it was starting with a clean slate. (See page 81) In connection with the preliminary injunction application, the parties suggested facts that the court should find. To the extent that the parties earlier agreed or did not object as to proposed facts, they were presumably admissions. This court's earlier statement that "there is no evidence of <u>appropriate</u> <u>and</u> <u>reliable</u> surveys" still has some significance, although there has obviously been an intervening "survey." This court deems that survey to be weak for reasons similar to why the survey in *Holiday* was not given significant weight.

6. This court might question plaintiffs' now asserted "motivation," but will not directly do so. In any event there was no evidence of actual injury, or likelihood of injury under state or federal law. Furthermore, this court stated that the *Holiday* reasoning with regard to state law claims has application here. This court did not make a finding of "dilution." This court simply said that if "the plaintiffs' survey proves anything, it <u>may</u> prove dilution." A mere possibility of

dilution is not proof of dilution under state or federal law.

    7. This court will not, at this stage, address this conclusory allegation.

    8. A similar argument was rejected in *Holiday*. Calling word association "confusion" does not make it so.

Plaintiffs'
Brief in
Support of Their
Motion for New Trial

    This court will make some reference to plaintiffs' further arguments in their brief which accompanied their Motion for New Trial. The plaintiffs' listing comparing *Holiday* with this case is lengthy, but not persuasive. Most of the differences listed by plaintiffs were not given significant consideration by the court in *Holiday*. The court will address some listed alleged differences.

    (1) Even though the *Holiday* case, to an extent, involved motels and campgrounds, the appellate court gave no significant weight to that difference. Both parties offered temporary lodging facilities. The *Holiday* court made a general reference to the motel, hotel and lodging business. The *Holiday* court noted that the plaintiff had expanded into the campground business.

    (2) The fact that plaintiffs' concede that "Big Lots" is a "unitary mark" was one of the bases for this court's decision.

    (3) In discussing *Holiday*, plaintiffs emphasize numerous "Holidays," but do not focus on "Lots" in saying that, "No one else anywhere uses "Big Lots" or "Little Lots."

    (4) Again, this court is still convinced that plaintiffs' "survey" was primarily a word association test as was the survey in *Holiday*.

    The plaintiffs next take issue with this court's saying that actual shoppers would notice a

3

difference and then cite a case which addressed "products." *Frehling* refers to the "reasonable belief" of the average consumer. 192 F.3d at 1338. This court's reference was to the overall method of display, the general nature of the type merchandise, the advertising, etc. This court suggests that photographs, etc. be examined. *Frehling* involves specific products. *Holiday* and this case involve a total business operation. The bottom line apparently is that the plaintiffs do not want anyone else to use the term "Lots" with regard to retail sales, regardless of likelihood of confusion or injury. As this court and *Frehling* have stated, the totality of circumstances should be considered and weighed.[1] Plaintiffs' suggestion that the advertising is similar is disingenuous.

This court's finding or suggestion with regard to intent was merely a repeat of what plaintiffs' "survey" shows; that there is word association and that the defendants may have known it.[2]

Plaintiffs quote *Scan Design of Florida, Inc.* for the proposition that a plaintiff "usually will not have to prove more than a few incidents of actual confusion." Here, none have been proved by a preponderance of the evidence. This court does not, as is suggested by plaintiffs, misunderstand their position that "Big Lots" is a single two word mark. To the contrary, while the court understands and agrees with the argument, the court views that argument as contributing to the weakness of plaintiffs' overall position. Big Lots is obviously different from Little Lots. Plaintiffs' argument with regard to MICROSOFT is interesting. Again, that argument appears to support this court's decision.

The plaintiffs do not question the court's finding of underlying facts, only that the court

---

[1] Also *see Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379 (11th Cir. 1997) and *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986).

[2] Again, *compare Holiday*.

has not given a clear indication of which facts it considered. The court considered all of the facts and applied what it considered to be pertinent law. When the court stated that it adopted certain reasoning, etc. in the preliminary injunction findings and conclusions, it had reference to the applicable legal issues and the facts which were agreed upon or not objected to by the parties.

While there may be room for disagreement, the plaintiffs' position is not so clear as to suggest that if this court's decision stands, "the purposes of trademark law have little or no room to operate and thus little meaning." To the contrary, the decision may stand for the proposition that a business cannot totally appropriate a common word such as "lots" by merely using it as part of a total mark.

### Big Lots' Points for Determination

This court will briefly respond to the plaintiffs' further presentation, in response to the court's request, entitled "Big Lots' Points for Determination on Motion for a New Trial" filed on April 2, 2004. The court will address the "points" in the same numbered order as did the plaintiffs.

1., 2., 3., and 4. This court's "point" is that the very nature of the products and their manner of display would not cause the public to reasonably think that they had a common source. The nature of the products sold and their manner of display would suggest to the contrary. This court doubts that the plaintiffs would wish to go on record publicly as saying that the plaintiffs' stores and the defendants' store are similar in display and nature of products. This court does not draw the same inferences from the "Powell Survey" as do the plaintiffs. Again, the real emphasis, no matter how disguised, is on word association. "Big League" or "Major League" would probably be "associated" with "Little League," but not confused. Both Big Leagues and

Little Leagues play baseball with bats, gloves, balls and uniforms. They do not get confused merely because of the word "league." Other examples of association but not confusion might be Big House and Little House, Big Dipper and Little Dipper, Big Warehouse and Little Warehouse, Big Market and Little Market, Big Store and Little Store, etc.

      5. and 6. The court merely determined that the advertising was so dissimilar as to not entitle the factor to significant weight. The differences are apparent.

      7.   The court, as previously indicated, simply disagrees with plaintiffs' arguments related to the survey. It is governed by word association. In *Holiday*, there was also "expert" evidence comparing "Inn" and "Out." Here, there was "expert" evidence comparing "Big" and "Little." While the "expert" survey and opinions of the plaintiffs have not been rebutted by other "expert" opinions and survey, this court is not significantly impressed with plaintiffs' said survey and opinions. The survey questions are somewhat loaded. With regard to whether mere word association equates with actual confusion, *see Sears, Roebuck & Co. v. All States Life Ins. Co.*, 246 F.2d 161, 170 (5th Cir. 1957) as well as *Holiday*.

      8.  This court is of the opinion that even if there is dilution in the abstract[3], Alabama courts would require some proof of likelihood of injury. Further, it is not clear that Alabama law would consider an incontestable mark "distinctive" per se. While the plaintiffs' mark is incontestable under federal law, it is not necessarily "distinctive" under state law. This court notes that certain language in the Federal Trademark Dilution Act discussed in *Mosely v. V. Secret Catalogue, Inc.*, 537 U.S. 418 (2003) with regard to dilution is the same as in Ala. Code 1975 § 8-12-17 ("dilution of the distinctive quality of [the] [a] mark"). Alabama courts usually

---

[3]The court does not so hold.

track federal law in similar intellectual property cases.

The court is satisfied that the plaintiffs have not proved any state law violation by a preponderance of the evidence. The court will not repeat the well-expounded arguments of the parties and the *Holiday* discussion in this regard.

9. The court adheres to its previously announced conclusions.

10. The court still concludes that the mark is "relatively" strong, merely because of its incontestable status. That is one factor. It, however, is not controlling. The totality of circumstances is to be considered.

Again, it is apparent from plaintiffs above described filing on April 2, 2004 that there was not so much a question of unresolved issues as issues resolved contrary to plaintiffs' position.

## Summary

In order to further clarify:

(1) This court does not attach significant weight to plaintiffs' survey as establishing actual confusion when considered in the light of the language in *Holiday* previously quoted. The court does not agree that the survey avoided mere word association.

(2) This court does not agree that *Holiday* is inapposite.

(3) This court does not agree that the mere fact that the BIG LOTS mark is incontestable and thus "relatively" strong is solely determinative of this case.

(4) Plaintiffs' repeated suggestion that their mark is unitary suggests that Little Lots is not likely to be confused with Big Lots.

(5) Plaintiffs have not proved infringement by a preponderance of the evidence.

(6) Plaintiffs have not proved state law violations by a preponderance of the evidence.

Compare *Holiday*. There has been no proof of likelihood injury which the Alabama court would require. Neither is there a "distinctive" mark.

(7) Plaintiffs have not rebutted the court's statements that there has been no proof of actual confusion by payment of bills, placing of orders or any other such specific instances of actual confusion.

(8) The plaintiffs have not rebutted the court's statements that there has been no significant attempt to copy any of plaintiffs' advertising, display methods, outdoor signs, etc.

(9) Ultimately, the court does not agree that the plaintiffs have met their burden of proving likelihood of confusion by a preponderance of the evidence.

(10) In their motion and accompanying brief, the plaintiffs suggest in a rather conclusory fashion that there were a number of issues which this court had not "resolved."[4] As it previously made it plain, this court decided the case based upon the totality of circumstances and all of the *Frehling* factors, without overemphasizing the weight assigned to any one factor. The court made its decision in the light of *Frehling* and *Holiday Inns, Inc.*

The *Mosely v. V. Secret Catalogue, Inc.*, case has some interesting discussion applicable to both dilution and infringement. First, it should be noted that both businesses sold lingerie. Second, the term "Victor's Little Secret" (changed from "Victor's Secret") obviously invokes a mental association with "Victoria's Secret." Further, the parties operated stores "a short drive" from each other. Victoria's Secret distributed 39,000 catalogues per year in the community where Victor's Little Secret was located. It was also conceded that the plaintiff's mark was famous and deserves a high level of protection. As distinguished from the mark at issue in this

---

[4] When given an opportunity, plaintiffs failed to list any such unresolved issues.

case, the plaintiff's mark was considered to be "arbitrary and fanciful," which would make it even more distinctive. A telling factor is that, although the case was obviously hard fought, the plaintiff did not even appeal the summary judgment against it on its infringement counts.

On the issue of mental association, the Court, in referring to Fourth Circuit case, stated:

> ...We do agree, however, with that court's conclusion that, at least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior users's mark with a famous mark is not sufficient to establish actionable dilution. As the facts of that case demonstrate, such mental association will not necessarily reduce the capacity of the famous mark to identify the goods of its owner, the statutory requirement for dilution under the FTDA. For even though Utah drivers may be reminded of the circus when they see a license plate referring to the "greatest *snow* on earth," it by no means follows that they will associate "the greatest show on earth" with skiing or snow sports, or associate it less strongly or exclusively with the circus. "Blurring" is not a necessary consequence of mental association. (Nor, for that matter, is "tarnishing.")
>
> The record in this case establishes that an army officer who saw the advertisement of the opening of a store named "Victor's Secret" did make the mental association with "Victoria's Secret," but it also shows that he did not therefore form any different impression of the store that his wife and daughter had patronized.

*Id.*, at 433-34.

The Alabama dilution statute somewhat differs from the Federal Trademark Dilution Act, ("FTDA') and the FTDA is perhaps narrower, but they both require <u>dilution</u> of the "distinctive quality" of the mark. Both statutes are apparently partially patterned after the 1947 Massachusetts Act cited in *Mosely*. *Id.*, at 430.

The Supreme Court quoted *Nabisco, Inc., v. P F Brands, Inc.*, 191 F.3d 208, 216 (2d Cir. 1999) as saying:

> "It is quite clear that the statute intends distinctiveness, in addition to fame, as an essential element. The operative language defining the tort requires that 'the [junior] person's ... use ... caus[e] dilution of the distinctive quality of the [senior] mark.' 15 U.S.C. § 1125(c)(1). There can be no dilution of a mark's distinctive quality unless the mark is distinctive." *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d

208, 216 (C.A. 1999).

*Id.*, at 426, note 5. As examples of marks considered to be distinctive, the Supreme Court refers to "KODAK," "DUPONT' and "BUICK"; all certainly more distinctive than "Lots." See footnote 10 in *Mosely* for a more extensive discussion of the type marks which are considered to be "distinctive."

While this court recognizes that the FTDA is somewhat narrower than the Alabama Act, they both require "dilution" and both require a "distinctive" mark. The only significant difference is that the FTDA requires proof of actual injury and the Alabama Act requires only proof of likelihood of injury. The Florida statute at issue in *Holiday*, however, likewise only required proof of likelihood of injury. The *Holiday* court found that there was no dilution because the marks were not confusing. *Id.*, at 450.

The state law at issue in *Holiday* was Florida statute 495.151. While the Alabama statute somewhat differs from the FTDA, the Florida statute is, in pertinent part, the same as the Alabama statute. They both refer to "likelihood of injury." While this court does not rely on the Florida cases in this regard, it is of interest that Florida law is apparently that its anti-dilution statute is not intended to apply where the marks are sued on with regard to similar products [businesses]. *See Portion Pac Chemical Corp. v. Sanitech Systems, Inc.*, 210 F. Supp. 2d (1302 (M.D. Fla. 2002) and *Monsanto Co. v. Campuzano,* 206 F.2d 1270 (S.D. Fla. 2002). Of further interest is the following quote from *Albert-Culver Company v. Andrea Dumon, Inc.*, 466 F.2d 705 (7th Cir. 1972) with regard to the Illinois anti-dilution statute:

> Plaintiff also argues that, in any event, the evidence established a likelihood of "dilution of the distinctive quality of the mark" within the meaning of the Illinois Trademark Statute, Ill. Rev.Stat., Ch. 140, § 22. That statute affords protection against use of a trade name by a non-competitor as well as by

competitors. *Polaroid Corp. v. Polaraid, Inc.*, 319 F.2d 830, 836-837 (7th Cir. 1963); *Spangler Candy Co. v. Crystal Pure Candy Co.*, 235 F.Supp. 18, 23 (N.D. Ill. 1954), affirmed, 353 F.2d 641 (7th Cir. 1966). Since plaintiff and defendant are competitors, there would be no need to rely on the dilution statute if there were a substantial similarity between the two labels or a "likelihood" of confusion. Conversely, without such similarity or likelihood, there is no greater right to relief under that provision than on traditional infringement grounds. Plaintiff's "dilution" argument is without merit.

If an incontestable term is, as a matter of law, always likely to be confused with any term using a similar word in a slightly similar business, this court may be wrong. If, however, it takes more than one mere word association, this court is likely right. This court has not been made aware of any cases finding infringement where two marks have one of the same words, but other words of entirely different meanings. There may be such cases. This court believes that *Holiday* stands for the proposition that mere word association, even in a slightly similar business, is not enough.

While there may be some differences in the tenor of the *Holiday* and *Frehling* cases, *Frehling* did not overrule *Holiday*. Further, the term "OGGETTI" is certainly more patently distinctive than the term "Lots." Again, while incontestability makes plaintiffs' mark "relatively strong," that is not solely determinative of this case. If it is, and the use of "lots" extends to all other uses of "lots," this court's decision may be wrong. This court will not fully repeat the parties' arguments in their post judgment briefs. Both sides have done a good job in addressing the issues and the court will direct the Clerk to file those briefs. This court's bottom line is that the only *Frehling* factor entitled to significant weight in plaintiffs' favor is that their mark is incontestable and, for that reason, relatively strong. Further, the parties are in, arguably, a partially similar business. The case has been decided on a preponderance of the evidence standard.

The parties may wish to further research, under the laws of various states, whether anti-dilution statutes apply to competitors. For example, *see Door Systems, Inc. v. Overhead Door Systems, Inc.*, 905 F. Supp. 492 (N.D. Ill. 1995) *aff'd* 83 F.3d 169 and *Spangler Candy Co. v. Crystal Pure Candy Co.*, 235 F. Supp. 18 (N.D. Ill. 1964), *aff'd* 353 F.2d 641.

This the 26th day of April, 2004.

/s/ Robert B. Propst
ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**